```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
```

| | | |
|---|---|---|
| ESTATE OF JAMES A. RUSSICK, | : | Civ. A. No. 13-7773(NLH)(AMD) |
| GAIL RUSSICK, Executrix | : | |
| on behalf of the | : | |
| Estate of James A. Russick, | : | |
| and GAIL RUSSICK, | : | |
| individually, | : | **OPINION** |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| TOM KOENIG and | : | |
| ANNE MARIE KOENIG, | : | |
| | : | |
| Defendants. | : | |

**APPEARANCES**

RICHARD T FAUNTLEROY
RICHARD T. FAUNTLEROY, P.C.
1525 SOUTH MAIN ST.
PLEASANTVILLE, NJ 08232

    On behalf of plaintiffs

MICHAEL W. KULAKOWSKI
POWELL, TRACHTMAN, LOGAN, CARRLE & LOMBARDO, P.C.
1814 EAST ROUTE 70
SUITE 350
CHERRY HILL, NJ 08003

    On behalf of defendant Tom Koenig

**HILLMAN, District Judge**

    In this case that concerns an unpaid loan, presently before the Court is the motion of defendant, Tom Koenig, to dismiss plaintiffs' claims against him for lack of personal jurisdiction. For the reasons expressed below, defendant's

1

motion will be denied without prejudice, and the parties will be directed to undertake a limited period of jurisdictional discovery.

## BACKGROUND

Plaintiffs, the estate of James A. Russick and Mr. Russick's wife, Gail Russick, who is the executrix of her late husband's estate, filed suit against Tom and Anna Marie Koenig, husband and wife, jointly, severally, and in the alternative, regarding a $188,000 loan the Russicks provided to the Koenigs in September 2007.  According to plaintiffs' complaint, the Koenigs required additional funding to complete the new house they were building in Tennessee, and they requested the loan from the Russicks at the Russick's home in Oaklyn, New Jersey.  In order to provide the Koenigs with the requested amount of $188,000, the Russicks obtained a home equity loan on their Oaklyn, New Jersey home.  The Koenigs received four checks in various amounts from September 28, 2007 through November 19, 2007 totaling $188,000.

In December 2007, Mr. Koenig signed a notarized note attesting to the loan, and at some point the Koenigs began making monthly payments of interest only to the Russicks, and they continued to do so until August 2010.  On January 20, 2009, Mr. Russick died, and plaintiffs claim that from that point on,

the Koenigs' payments became irregular until they defaulted on the loan. In September, October, and November 2009, the estate and Mrs. Russick demanded payment of the loan in full and any accrued interest, and repeated demands have been made since then. Plaintiffs claim that the defendants have refused to pay. Based on these allegations, plaintiffs have lodged claims for breach of contract, promissory estoppel, unjust enrichment, and "fraud based on bad-faith promise."

Defendant Tom Koenig has filed a motion to dismiss plaintiffs' complaint against him pursuant to Federal Civil Procedure Rule 12(b)(2) for lack of personal jurisdiction, and plaintiffs have opposed Mr. Koenig's motion. In the motion papers, it is revealed that Anna Marie Koenig is the daughter of the Russicks, and Tom Koenig is Anna Marie's husband. Mr. Koenig, however, disavows any involvement with the loan. In his affidavit in support of his motion, Mr. Koenig states that his wife unilaterally negotiated and obtained the loan without his knowledge, he has never received any of the money from the loan, the money was never deposited into any bank accounts over which he was an authorized user, he never spent the money, and he never made any payments. Mr. Koenig further states:

> The first time that I learned that the Loan had been requested or made was in December 2007, after the Loan had apparently already been made and fully funded. At

3

> that time, my wife told me that she had requested and obtained the Loan from her parents and had used the Loan proceeds to pay the contractor constructing our home. She also informed me that she had been making interest payments to her parents on the Loan. My wife further informed me that Mr. Russick desired for us to send him something in writing acknowledging that we had taken advantage of the Loan. Aside from these representations by my wife, I had and continue to have no actual knowledge that the Loan was requested, made, or funded.
>
> In December 2007, Mr. Russick unilaterally contacted me via telephone and requested that my wife and I send him something in writing acknowledging that we had taken advantage of the Loan. In response to Mr. Russick's request, and in reliance upon my wife's representations that the Loan had been requested, made, and funded, I sent Mr. Russick a document acknowledging that my wife and I had taken advantage of a $188,000.00 loan from Mr. Russick and his wife. However, at the time I sent Mr. Russick that document, I still had no actual knowledge that the Loan had been requested, made, or funded. Rather, the only information I had was the prior representations made to me by my wife.
>
> Prior to Mr. Russick's unilateral phone call to me in December 2007 requesting written acknowledgment that my wife and I had taken advantage of the Loan, I never communicated with him or Mrs. Russick about the Loan.

(Def. Ex. A, ¶¶ 10-12, Docket No. 7-1.)

Based on Mr. Koenig's affidavit regarding his lack of involvement with the loan – and correspondingly his lack of involvement with New Jersey – other than to send the Russicks the December 2007 document acknowledging the loan, Mr. Koenig argues that this Court cannot exercise personal jurisdiction over him to resolve plaintiffs' claims.

4

In opposition to Mr. Koenig's motion, plaintiffs have submitted an affidavit from Gail Russick, wherein she "cannot believe" that Mr. Koenig would disavow any knowledge of the loan.  She states that Mr. Koenig made several telephone calls to Mr. Russick, and she participated in one of the calls, which lasted more than an hour.  In addition to the December 2007 notarized document from Mr. Koenig to the Russicks, Mrs. Russick attaches an August 2009 letter from her financial advisor, Jack Carini, to Mr. Koenig.  In that letter, Mr. Carini states that in the process of assisting Mrs. Russick with the estate, he

> discovered a signed affidavit with your signature stating a loan transaction between you and James & Gail Russick. This has become a problem for Gail due to the changes she would like to make in her life at this time. The home has a loan/lien against it and it must be removed so the personal residence can be sold, placed in a trust or resided in without incumbency.
>
> To make this agreement binding and much clearer for all parties concerned, there is a Promissory Note enclosed for you to review and make effective.
>
> The enclosed agreement must be signed, dated, notarized and returned with the first installment payment by September 15th, 2009. If the signed agreement is not returned by the deadline of September 15th, 2009, the entire amount of the note will become due by September 30, 2009. A formal lien will be placed on all your properties to protect Gail Russick's interests.

(Pl. Ex. B, Docket No. 9-1 at 7.)

Mr. Koenig responded back with a letter to the financial

advisor on September 11, 2009:

> This is in response to your letter to me concerning a request for a promissory note to your client, Gail M. Russick. I have checked with my wife and she indicates she is completely unaware of any such request. I would hope that you will be able to consult further with Ms. Russick to make certain of her intentions in this matter.
>
> In any event, the unfortunate fact is that my wife and I are not in a position at this time to alter the agreements previously made and execute the note you requested. The monthly payments you have asked for are simply not in a range that we could even begin to accommodate. The terms of repayment agreed to when these funds were provided were that interest only payments would be all that was necessary for a number of years in order to allow for completion of the home and an extended period after that until we could get out from under the significant indebtedness we were incurring to build our home. The home is still not complete and will require significant additional funds in order to finish.  We are in a position to, and we will, continue to make the agreed upon interest only payments.
>
> Please also understand that at no time was any mortgage or other lien ever discussed. As a result, you would have no right or ability to validly place any lien on any property I or my wife and I own. Any attempt to do so would have serious repercussions, not the least of which is it would give the construction lender a basis for calling its loan, which would have catastrophic consequences for all concerned.

(Pl. Ex. B, Docket No. 9-1 at 8.)

Mrs. Russick's affidavit further states that money from the loan was sent in draws to Mr. Koenig from New Jersey to Tennessee, and the money was deposited into an account controlled by Mr. Koenig at Oakridge Lab Credit Union.  Checks

6

were then drawn off of that account to pay the contractors.

In response to Mrs. Russick's affidavit, Mr. Koenig asks the Court to completely disregard it because it contains statements not based on personal knowledge, as well as arguments of fact and law.  Mr. Koenig also argues that even if the Court were to consider Mrs. Russick's affidavit, its contents still do not support personal jurisdiction.

## DISCUSSION

### A. Subject Matter Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.  Plaintiffs, Gail Russick and her late husband James Russick, are citizens of New Jersey, see 28 U.S.C. § 1332(c)(2) (the legal representative of the estate of a decedent is deemed to be a citizen of the same state as the decedent), and defendants Anna Marie Koenig and Tom Koenig are citizens of Tennessee.

### B. Standard for Motion to Dismiss pursuant to Rule 12(b)(2)

Federal Rule of Civil Procedure 12(b)(2) provides for dismissal of an action when the Court does not have personal jurisdiction over a defendant.  "Once challenged,

7

the plaintiff bears the burden of establishing personal jurisdiction."  O'Connor v. Sandy Lane Hotel Co., Ltd., 496 F.3d 312, 316 (3d Cir. 2007) (citing Gen. Elec. Co. v. Deutz AG, 270 F.3d 144, 150 (3d Cir. 2001)).  In deciding a motion to dismiss for lack of personal jurisdiction, the Court must "accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff."  Carteret Sav. Bank v. Shushan, 954 F.2d 141, 142 n.1 (3d Cir.), cert. denied, 506 U.S. 817 (1992) (citations omitted).[1]

A defendant is subject to the jurisdiction of a United States district court if the defendant "is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located[.]"  Fed. R. Civ. P.

---

[1] There is a "significant procedural distinction" between a motion pursuant to Rule 12(b)(2) and a motion pursuant to Rule 12(b)(6).  Time Share Vacation Club v. Atlantic Resorts, Ltd., 735 F.2d 61, 66 n.9 (3d Cir. 1984).  "A Rule 12(b)(2) motion, such as the motion made by the defendants here, is inherently a matter which requires resolution of factual issues outside the pleadings, i.e. whether in personam jurisdiction actually lies. Once the defense has been raised, then the plaintiff must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence. . . . [A]t no point may a plaintiff rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of in personam jurisdiction.  Once the motion is made, plaintiff must respond with actual proofs, not mere allegations."  Id. (citation omitted).

4(k)(1)(A).  "A federal court sitting in New Jersey has jurisdiction over parties to the extent provided under New Jersey state law."  <u>Miller Yacht Sales, Inc. v. Smith</u>, 384 F.3d 93, 96 (3d Cir. 2004)(citations omitted).  The New Jersey long-arm statute "permits the exercise of personal jurisdiction to the fullest limits of due process."  <u>IMO Indus., Inc. v. Kiekert AG</u>, 155 F.3d 254, 259 (3d Cir. 1998) (citing <u>DeJames v. Magnificence Carriers, Inc.</u>, 654 F.2d 280, 284 (3d Cir. 1981)).

Under the Due Process clause, the exercise of personal jurisdiction over a non-resident defendant is appropriate when the defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  <u>Int'l Shoe Co. v. Washington</u>, 326 U.S. 310, 316 (1945) (quoting <u>Milliken v. Meyer</u>, 311 U.S. 457, 463 (1940)).

A defendant establishes minimum contacts by "'purposefully avail[ing] itself of the privilege of conducting activities within the forum State,'" thereby invoking "'the benefits and protections of [the forum State's] laws.'"  <u>Asahi Metal Indus. Co., Ltd. v. Sup. Ct. of California</u>, 480 U.S. 102, 109 (1987) (quoting <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 475 (1985)).  This "purposeful availment" requirement assures that the defendant could reasonably anticipate being haled into court

in the forum and is not haled into a forum as a result of "random," "fortuitous" or "attenuated" contacts with the forum state.  See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980); see also Burger King Corp., 471 U.S. at 472, 475 (internal citations omitted).

In deciding whether a defendant's contacts with a forum are sufficient to confer personal jurisdiction over that party, the Court must consider whether such contacts are related to or arise out of the cause of action at issue in the case.  The Court may exercise specific personal jurisdiction over a defendant where the cause of action is related to or arises out of activities by the defendant that took place within the forum state.  Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 n.8 (1984).  If the cause of action has no relationship to a defendant's contacts with a forum state, the Court may nonetheless exercise general personal jurisdiction if the defendant has conducted "continuous and systematic" business activities in the forum state.  Id. at 416.

Once the Court determines that the defendant has minimum contacts with the forum state, it must also consider whether the assertion of personal jurisdiction over the defendant "comport[s] with 'fair play and substantial justice'" to satisfy the due process test.  Burger King Corp., 471 U.S. at 476

(quoting Int'l Shoe, 326 U.S. at 320). In this regard, it must be reasonable to require the defendant to litigate the suit in the forum state, and a court may consider the following factors to determine reasonableness: the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining an efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies. Id. at 477 (citing World Wide Volkswagen, 444 U.S. at 292).

    **C.   Analysis**

The main argument advanced by Mr. Koenig to defeat this Court's exercise of personal jurisdiction over him is that the Court must consider each defendant's contacts with the forum independently, plaintiffs' complaint refers to the Koenigs collectively, and his affidavit proves that had nothing to do with the loan, other than sending two letters to New Jersey, which is insufficient to establish the constitutionally acceptable minimum contacts with New Jersey to be hailed into this forum. In response, plaintiffs argue that their allegations in their complaint must be accepted as true, and those allegations concerning Mr. Koenig demonstrate his

11

purposeful availment to New Jersey regarding the request for the loan, the receipt of funds from the loan, his repayment of some of the loan, and his two letters confirming the existence of the loan.[2]

One of Mr. Koenig's arguments is correct: other than the allegation concerning Mr. Koenig's December 2007 notarized letter, the amended complaint does not contain allegations specifically regarding Mr. Koenig's contacts with New Jersey. Instead, plaintiffs' complaint asserts allegations collectively against "the Koenigs." This is not fatal to the Court's exercise of personal jurisdiction over Mr. Koenig, because plaintiffs' allegations are that Mr. Koenig (and Mrs. Koenig) requested the loan in New Jersey, Mr. Koenig (and Mrs. Koenig) received the proceeds from New Jersey, Mr. Koenig (and Mrs.

---

[2] The Court notes that, standing alone, the two letters Mr. Koenig sent to New Jersey may not form the basis for specific jurisdiction.  See Rosato v. Walt Disney Co., 2012 WL 4464030, *8 (D.N.J. 2012) (finding that the two letters sent to the plaintiff from the defendant did not support a basis for specific jurisdiction in New Jersey) (citing IMO Indus., 155 F.3d at 260 (holding that the weight of authority among the courts of appeal is that minimal communication between the defendant and the plaintiff in the forum state, without more, will not subject the defendant to the jurisdiction of the state's court system.); Rodi v. Southern New England School of Law, 255 F. Supp. 2d 346, 350–51 (D.N.J. 2003); Jakks Pacific, Inc., v. Conte, No. 11-479, 2011 WL 6934856, at *6 (D.N.J. December 30, 2011) (holding that the law is clear that a cease-and-desist letter alone does not satisfy the personal jurisdiction requirements)).

Koenig) made payments to New Jersey, et cetera. It demonstrates, however, that there are several missing pieces to this personal jurisdiction puzzle that must be addressed before a determination on personal jurisdiction is made. See Mellon Bank (East) PSFS, Nat. Ass'n v. Farino, 960 F.2d 1217, 1223 (3d Cir. 1992) ("The fact that a non-resident has contracted with a resident of the forum state is not, by itself, sufficient to justify personal jurisdiction over the nonresident. The requisite contacts, however, may be supplied by the terms of the agreement, the place and character of prior negotiations, contemplated future consequences, or the course of dealings between the parties.").

The first missing piece is sadly incurable. It appears that most of the conversations regarding the loan were between Mr. Russick and either or both Mrs. Koenig and Mr. Koenig. Mrs. Russick states in her affidavit that Mr. Koenig called Mr. Russick in New Jersey on several occasions and spoke with Mr. Russick, which Mr. Koenig denies. Because of the unavailability of Mr. Russick, the Court cannot credit either party on this point, as the absence of Mr. Russick's version of events could equally benefit or hinder each party's position.

The second missing piece is defendant Anna Marie Koenig. Mrs. Koenig is plaintiff Gail Russick's daughter, and she is

13

defendant Tom Koenig's wife. No attorney has made an appearance on her behalf in the case, she has not expressed her intention to proceed *pro se*, she has not answered the complaint or otherwise attempted to respond to it, and although she is the center of the controversy, she is currently a phantom litigant.

Mr. Koenig contends that his wife unilaterally asked for a $188,000 loan from her parents, she negotiated the loan's terms, she accepted the money, paid the contractors, and paid interest payments for two years to her parents, all without him having any involvement or awareness of his wife's actions relating to the loan. The Court cannot opine on the veracity of Mr. Koenig's representations at this point and will accept his affidavit as truthful for the purposes of his motion.[3] But even accepting as true his lack of involvement with the loan, his

---

[3] The Court questions whether a self-serving affidavit from a defendant challenging personal jurisdiction, without any other supporting proof, constitutes a proper challenge. See Arrington v. Colortyme, Inc., 972 F. Supp. 2d 733, 742 (W.D. Pa. 2013) ("[T]he Court finds that this quantum of evidence--a short self-serving affidavit with no supporting documentation--cannot itself sustain a factual attack on the Court's subject-matter jurisdiction.") (citing Washington v. Hovensa LLC, 652 F.3d 340, 346-47 (3d Cir. 2011); De Cavalcante v. C.I.R., 620 F.2d 23, 26-27 (3d Cir. 1980) (when charged with making evidentiary determinations, court may find that self-serving affidavits absent evidentiary support are insufficiently probative)). The court-ordered jurisdictional discovery in this case will hopefully provide more proof to either establish or prevent personal jurisdiction over Mr. Koenig.

14

request that this Court disregard his relationship with his wife and view him as a separate entity is unpersuasive.

Legally married spouses maintain a special status as a single unit in many areas of the law, and the actions of a husband and wife cannot be separated from one another as concretely as unrelated people or entities.  For example, spouses filing joint federal income tax returns are generally jointly and severally liable for the full amount of tax due on their combined incomes.  A requesting taxpayer, however, who files a joint tax return may qualify for Innocent Spouse Relief and be relieved of joint and several liability for unpaid sums if the requesting spouse only had a nominal ownership of an item, or if the spouse did not know, and had no reason to know, that funds intended for the payment of tax were misappropriated by the nonrequesting spouse for the nonrequesting spouse's benefit.  See Maluda v. C.I.R., 431 Fed. Appx. 130, 131-132, 2011 WL 2686278, 1 (3d Cir. 2011) (discussing I.R.C. § 6013(d)(3) and § 6015).  Mr. Koenig is advancing a similar "innocent spouse" argument in this case, but the resolution of the cited tax case illustrates the high burden placed on proving an "innocent spouse" defense.

In Maluda, the court denied the spouse's request to be relieved from the tax liability based on nominal ownership and

15

fraud:

> The parties stipulated the Maludas' income came almost exclusively from John's business and was held jointly by John and Cathy. While John claims Cathy "handled all financial matters" for the household, the record does not clearly support that conclusory assertion. Furthermore, even if Cathy did exercise exclusive control over the income, John voluntarily acceded to Cathy's controlling the Maludas' income. "[I]ncome earned by one person is taxable as his, if given to another for the donor's satisfaction." Accordingly, John cannot deny ownership of income because his wife controlled the family finances while he earned the income. . . .
>
> John also contends he meets condition 7(c) of section 4.01 because he alleges Cathy produced false tax returns and misappropriated funds earmarked for tax payments. John insists he did not know of Cathy's misdeeds, nor could he have known. Again, the record does not clearly support these conclusions. The stipulated facts demonstrate only that the Maludas' joint tax returns between 1998 and 2002 were never filed with the IRS, and the Valley National Bank passbook in the Maludas' name is a complete fabrication. John maintains Cathy is responsible for these transgressions. However, the record identifies no actor responsible for any misrepresentations or misappropriations. The parties never agreed, nor does the documentary record clearly demonstrate, that Cathy bore sole responsibility for underreporting income to the IRS or diverted funds to her own use.
>
> Even if Cathy did misrepresent the couple's income, John presents no evidence she acted without his knowledge. Had the Tax Court conducted a trial, John might have demonstrated Cathy's culpability and his own innocence. Because the parties submitted the case on the basis of a stipulated record, John had no such opportunity. Therefore, the court did not clearly err in concluding the record "does not establish that Ms. Maluda misappropriated funds intended for tax payments."

Maluda, 431 Fed. Appx. at 132-33 (internal citations omitted).

Mrs. Koenig holds the key to many of the representations made by Mrs. Russick and Mr. Koenig concerning Mr. Koenig's contacts with New Jersey. She can provide proof as to whether Mr. Koenig was as involved with the loan as plaintiffs' complaint and affidavit maintain, or she can support Mr. Koenig's statement that he had no part in the loan. Her silence in this case may be due to conflicting familial pressures, but she is a party to the action and may be compelled to participate.

The third missing piece of the personal jurisdictional puzzle is the documentation relating to the loan funds. Mr. Koenig argues that because Mrs. Russick has not attached cancelled checks, bank statements, or evidence of transferred funds to her complaint or affidavit, it proves that none of those documents exist to connect Mr. Koenig to the loan, and to New Jersey. Although Mr. Koenig's argument is flawed logic, his point is well-taken. A home equity loan for $188,000, disseminated to the Koenigs in four large increments and then paid over to a building contractor, must have a paper trail.

Considering the three issues overshadowing this case, the Court will direct the parties to a brief period of

17

jurisdictional discovery in order to enable the Court to properly assemble the personal jurisdictional puzzle. Plaintiffs have presented factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts between Mr. Koenig and New Jersey.[4]  Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 457 (3d Cir. 2003) ("It is well established that in deciding a motion to dismiss for lack of jurisdiction, a court is required to accept the plaintiff's allegations as true, and is to construe disputed facts in favor of the plaintiff.").  As a result, plaintiffs' "right to conduct jurisdictional discovery should be sustained."  Toys "R" Us, Inc., 318 F.3d at 456 ("Although the plaintiff bears the burden of demonstrating facts that support personal jurisdiction, courts are to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim is 'clearly frivolous.'" (citations omitted)).

    Accordingly, the Court will deny Mr. Koenig's motion without prejudice to his right to refile his motion upon the conclusion of jurisdictional discovery.  The parties will be afforded ninety days to gather documents and testimony regarding

---

[4] At this time, the Court does not need to address how plaintiffs' tort claim affects the exercise of personal jurisdiction over Mr. Koenig.

Mr. Koenig's contacts with New Jersey, and this limited discovery will be monitored by the Magistrate Judge to whom this matter is referred.

An appropriate Order will be entered.


Date: September 25, 2014          s/ Noel L. Hillman
At Camden, New Jersey            NOEL L. HILLMAN, U.S.D.J.