```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| ESTATE OF JAMES A. RUSSICK, GAIL RUSSICK, EXECUTRIX, GAIL RUSSICK, INDIVIDUALLY, | 1:13-cv-07773-NLH-AMD |
| | **OPINION** |
| Plaintiffs, | |
| v. | |
| TOM KOENIG and ANNA MARIE KOENIG, JOINTLY, SEVERALLY AND IN THE ALTERNATIVE, | |
| Defendants. | |

**APPEARANCES**:

RICHARD T FAUNTLEROY
RICHARD T. FAUNTLEROY, P.C.
1525 SOUTH MAIN ST.
PLEASANTVILLE, NJ 08232
     On behalf of Plaintiffs

BENJAMIN A. ANDERSEN
POWELL TRACHTMAN, P.C.
475 ALLENDALE ROAD
SUITE 200
KING OF PRUSSIA, PA 19406
     On behalf of Defendant Tom Koenig

**HILLMAN, District Judge**

   Presently before the Court is the motion of Defendant Tom Koenig for summary judgment in his favor on Plaintiffs' claim that he is responsible for an unpaid loan. For the reasons expressed below, Defendant's motion will be denied.

**BACKGROUND**

Defendants Tom Koenig ("Koenig") and Anna Marie Koenig (collectively "the Koenigs"), as husband and wife, obtained $188,000.00 from Anna Marie Koenig's parents in New Jersey in order to build a home in Tennessee.[1] Anna Marie Koenig's father passed away, and her mother, Gail Russick, as executrix of James Russick's estate, filed suit against the Koenigs[2] to recover the balance of what she considers to be a loan, which was financed by a home equity loan on the Russick's New Jersey home.[3]

Tom Koenig has moved for summary judgment in his favor, arguing that not only did he have no involvement in obtaining the money from the Russicks, discovery has revealed that Mr. Russick unilaterally gifted his daughter the money without any expectation of repayment, other than his daughter's payment of the monthly interest. Koenig further contends that when Anna

---

[1] The record indicates that during the course of this litigation, the Tom and Anna Marie Koenig have separated. It is not clear whether the parties have instituted formal divorce proceedings.

[2] A clerk's entry of default was entered against Anna Marie Koenig on June 30, 2016 and she failed to appear at two depositions. Her deposition was finally taken on January 31, 2017. Plaintiffs have not moved for default judgment against her.

[3] The Court has issued two previous Opinions in this case concerning Tom Koenig's contention that personal jurisdiction over him was lacking. After a short period of discovery limited to the personal jurisdiction issue, the Court found that the exercise of personal jurisdiction over him in this Court in this matter is proper. (See Docket No. 11 and 25.)

2

Marie Koenig stopped paying the interest payments, her parents never sought to enforce the monthly interest payments, which evidences the purported loan was actually a gift, and otherwise constitutes a waiver of any claim to subsequent interest payments.

In contrast to Tom Koenig's position, Plaintiffs contend that disputed issues of material fact preclude summary judgment on Plaintiffs' claim that the money was a loan and not a gift, and that there was no waiver of Plaintiffs' contractual rights against the defendants.[4] To support their position, Plaintiffs point to Anna Marie Koenig's testimony about her conversations with her father and her husband about the loan and intentions that the $188,000 was to be repaid, as well as Gail Russick's understanding of the agreement. Plaintiffs also show the monthly payments of the loan interest to James Russick as part of the terms of the loan, and Tom Koenig's three written statements acknowledging the loan and his and his wife's obligation to repay it.

## DISCUSSION

**A.   Subject matter jurisdiction**

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship

---

[4] Plaintiffs have not cross-moved for summary judgment in their favor on their claims against Tom Koenig.

3

between the parties and the amount in controversy exceeds $75,000. Plaintiffs, Gail Russick and her late husband James Russick, are citizens of New Jersey, see 28 U.S.C. § 1332(c)(2) (the legal representative of the estate of a decedent is deemed to be a citizen of the same state as the decedent), and defendants Anna Marie Koenig and Tom Koenig are citizens of Tennessee.

B.  **Standard for Summary Judgment**

Summary judgment is appropriate where the Court is satisfied that the materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, or interrogatory answers, demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(a).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence;

4

instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)(quoting Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id. Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 256-57. A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements. Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

**C. Analysis**

With regard to the issue of whether the $188,000 was a loan or a gift, there are three elements of a valid and irrevocable gift: (1) actual or constructive delivery; (2) donative intent; and (3) acceptance. Bhagat v. Bhagat, 84 A.3d 583, 593 (N.J. 2014) (citations omitted). The burden of proving an inter vivos gift is on the party who asserts the claim, and the recipient

5

must show by "clear, cogent and persuasive" evidence that the donor intended to make a gift. Id. at 594 (citations omitted). The exception to this burden is when the transfer is from a parent to a child. In that case, a presumption arises that the transfer is a gift, and the initial burden of proof on the party claiming a gift is slight. Id. (citations omitted).

This parent-child gift presumption is rebuttable by evidence of a contrary intent. Such evidence must meet the clear and convincing evidence standard of proof to rebut the presumption, and it must be "antecedent to, contemporaneous with, or immediately following the transfer." Id. at 597. "In addition, a party seeking to rebut the presumption may also adduce proof of statements by the parties concerning the purpose and effect of the transfer." Id. at 597-98.

With regard to whether Plaintiffs' right to the interest payments was waived, a "waiver" is the intentional relinquishment of a known right – "[i]t is a voluntary act, and implies an election by the party to dispense with something of value, or to forego some advantage which he might at his option have demanded and insisted on." West Jersey Title & Guaranty Co. v. Industrial Trust Co., 141 A.2d 782, 786-87 (N.J. 1958) (quotations and citations omitted). "It is requisite to waiver of a legal right that there be a clear, unequivocal, and decisive act of the party showing such a purpose or acts

6

amounting to an estoppel on his part," and a waiver "presupposes a full knowledge of the right and an intentional surrender." Id. (quotations and citations omitted).

Thus, in order to defeat Tom Koenig's motion for summary judgment on his contention that the $188,000 was a gift from the Russicks to Anna Marie Koenig, Plaintiffs must provide evidence "antecedent to, contemporaneous with, or immediately following the transfer," which if believed by a jury, would constitute clear and convincing evidence that the $188,000 was a loan and not a gift. On the flip side, in order to prevail on summary judgment that Plaintiffs waived their rights to collect interest, Tom Koenig must provide undisputed evidence of a clear, unequivocal, and decisive act by Plaintiffs demonstrating that they intentionally surrendered their right to collect interest on the $188,000. Plaintiffs have met their burden on the first issue, and Tom Koenig has not met his burden on the second.

Plaintiffs' evidence reveals:

- From September 28, 2007 through November 19, 2007, James Russick sent his daughter four checks in various amounts totaling $188,000.

- Anna Marie Koenig testified that she considered the $188,000 to be a loan that was to repaid in full, along with the interest, even if the precise terms of

7

repayment of the principal were not specifically laid out at that point.

- Gail Russick testified that she considered the $188,000 to be a loan, even though it was arranged mostly by her husband.

- Anna Marie Koenig made interest payments to the Russicks on December 1, 2007, January 1, 2008, January 26, 2008, April 5, 2008, May 5, 2008, June 8, 2008, July 8, 2008, August 5, 2008, October 17, 2008, November 2, 2008 and March 2, 2009. The interest payments varied each month due to a variable interest rate.

- In late 2008, James Russick became ill, was diagnosed with cancer with a three-month life expectancy, and died on January 20, 2009.

- Anna Marie Koenig testified that after the November 2008 interest payment, her husband assumed the responsibility of making the interest payments and indicated that his secretary would contact her father to determine the amount for the subsequent interest payments.

- Anna Marie Koenig testified that her husband did not make any interest payments.

- On December 17, 2007, Tom Koenig drafted, signed, and had notarized, a letter stating:

    > Please accept this note verifying that Anna Marie and Tom Koenig have taken advantage of a $188,000.00 loan through Mr. and Mrs. James Russick, that began with draws starting on or about October, 2007.

    (Docket No. 76-10 at 2.)

- In August 2009, James Russick's financial advisor, Jack Carini, sent a letter to Tom Koenig. In that letter, Carini states that in the process of assisting Gail Russick with the estate, he:

    > discovered a signed affidavit with your signature stating a loan transaction between you and James & Gail Russick. This has become a problem for Gail due to the changes she would like to make in her life at this time. The home has a loan/lien against it and it must be removed so the personal residence can be sold, placed in a trust or resided in without incumbency.
    >
    > To make this agreement binding and much clearer for all parties concerned, there is a Promissory Note enclosed for you to review and make effective.
    >
    > The enclosed agreement must be signed, dated, notarized and returned with the first installment payment by September 15th, 2009. If the signed agreement is not returned by the deadline of September 15th, 2009, the entire amount of the note will become due by September 30, 2009. A formal lien will be placed on all your properties to protect Gail Russick's interests.

    (Docket No. 78-10 at 1.)

- On September 11, 2009, Tom Koenig responded back with

9

a letter to the financial advisor:

> This is in response to your letter to me concerning a request for a promissory note to your client, Gail M. Russick. I have checked with my wife and she indicates she is completely unaware of any such request. I would hope that you will be able to consult further with Ms. Russick to make certain of her intentions in this matter.
>
> In any event, the unfortunate fact is that my wife and I are not in a position at this time to alter the agreements previously made and execute the note you requested. The monthly payments you have asked for are simply not in a range that we could even begin to accommodate. The terms of repayment agreed to when these funds were provided were that interest only payments would be all that was necessary for a number of years in order to allow for completion of the home and an extended period after that until we could get out from under the significant indebtedness we were incurring to build our home. The home is still not complete and will require significant additional funds in order to finish. We are in a position to, and we will, continue to make the agreed upon interest only payments.
>
> Please also understand that at no time was any mortgage or other lien ever discussed. As a result, you would have no right or ability to validly place any lien on any property I or my wife and I own. Any attempt to do so would have serious repercussions, not the least of which is it would give the construction lender a basis for calling its loan, which would have catastrophic consequences for all concerned.

(Docket No. 78-11 at 1.)

- On December 9, 2009, Tom Koenig wrote a letter to Gail Russick, where in response to her suggestion that he liquidate other investments, Koenig stated

10

that it was not feasible because it was "not the intent of the original loan to us." (Docket No. 78-13 at 1.)

Tom Koenig argues that the foregoing evidence does not constitute clear and convincing proof that James Russick's $188,000 payment to his daughter was not a gift. Tom Koenig contends that while his wife believed her father would assist them financially by co-signing a loan, Russick unilaterally secured a mortgage on his home and provided the money to his daughter which evidences the gratuitous nature of the act. Tom Koenig also points to the lack of any formal agreement between his wife and her father with regard to repayment of the principal as proof that it was not a loan.

As to the December 17, 2007, September 11, 2009, and December 9, 2009 letters Tom Koenig drafted acknowledging the $188,000 as a loan to be repaid, Tom Koenig contends that the only reason he executed those documents is because his wife represented to him that it was a loan – not that he independently understood the money was a loan.[5] Tom Koenig

---

[5] In his reply brief in an effort to explain his deposition testimony and the three letters, Tom Koenig provides an affidavit stating that he only thought he was obligated to repay the $188,000 because he was mistaken about his liabilities for his spouse's debts, in the event that the $188,000 is considered a loan and not a gift. (Docket No. 79-3 at 4.) Koenig's testimony as to his beliefs is for a jury to assess. Additionally, as the Court noted previously, Plaintiffs are

11

further argues that those documents cannot be considered in determining the intent of James Russick because they are not "antecedent to, contemporaneous with, or immediately following" the transfer of money, with the December 17, 2007 letter occurring two months after the first check and twenty-eight days after the final check, and the other two letters occurring two years after the transfer.

Tom Koenig finally argues that the Russicks' failure to collect on the interest payments for ten months – from November 2008 until September 2009 – evidences first James Russick's, and later Gail Russick's, knowing relinquishment of any interest going forward.

The Court does not find Tom Koenig's position on either point to be availing. First, Koenig argues that the Court must disregard his three letters since they are not "antecedent to, contemporaneous with, or immediately following" the transfer, by way of 28 days after the final disbursement, two months after

---

suing the Koenigs jointly and severally, and whether Koenig will ultimately be responsible for the loan if judgment is entered in Plaintiffs' favor against him will be determined in a family court proceeding. (Docket No. 24 at 6 n.4 (citing <u>Alford v. Alford</u>, 120 S.W.3d 810, 813 (Tenn. 2003) (holding that "marital debts" are all debts incurred by either or both spouses during the course of the marriage up to the date of the final divorce hearing, and guidelines in the equitable distribution of marital debt insure the fairest possible allocation of debt, and protect the spouse who did not incur the debt from bearing responsibility for debts that are the result of personal excesses of the other spouse).)

the first disbursement, and two years after the initial and final disbursements.  Koenig, however, constrains the concept of "immediately following" without any support in the law as to what time frame "immediately following" means.  Koenig's December 17, 2007 letter states that the $188,000 from the Russicks was a loan, with draws starting in about October 2007, just two months before.  Koenig's December 17, 2007 letter also occurred after the first interest payment was made on the loan, and before eight future interest payments were made.  Koenig has not pointed to any cases where a writing confirming the nature of the conveyance of money a month or two after that conveyance is not considered "immediately following."

Similarly, although Tom Koenig's September 2009 and December 2009 letters are two years later, those letters merely affirm what his December 2007 letter acknowledged, along with subsequent events that also confirm that nature of the original transfer.  Again, Koenig has not provided any citation that would deem these letters to be outside of the permissible realm of consideration.  Indeed, in Bhagat, the trial court considered documents related to the transfer of shares from parent to child that were provided over the course of several years from the original conveyance, and only rejected a sworn certification made more than 20 years after the time of the purported gift. Bhagat, 84 A.3d at 589.  Moreover, the Bhagat court noted that

13

"the subsequent conduct of the parties may be given in evidence to corroborate the inference drawn from prior and contemporaneous circumstances." Id. (citing Bertolino v. Damario, 107 N.J. Eq. 201, 202, 152 A. 330 (E. & A. 1930) (explaining that gift presumption may be rebutted by later admissions of parties)); Weisberg v. Koprowski, 111 A.2d 481 (N.J. 1955) (not precluding evidence of conduct subsequent to the son's purchase of the house in which his mother lived to rebut the presumption of a gift)). Thus, Plaintiffs' proffer of Koenig's letters as his admission to the nature of the $188,000 is permissible, and if accepted as true by a jury, serves as evidence to rebut the presumption that the money was a gift from father to daughter.

Even if Tom Koenig's letters were not considered, Plaintiffs have provided sufficient proof, if believed by a jury, to meet their clear and convincing burden of proof to rebut the presumption that the money transfer was a parent-to-child gift. The matter is complicated by the absence of the primary actor, James Russick, as well as the adversarial nature of a mother's claims against her daughter and her estranged husband, but Gail Russick and Anna Marie Koenig testified that the money was a loan, and Tom Koenig testified that his wife represented to him that it was a loan. Additionally, the payment of interest over at least a year before the Koenigs'

financial situation deteriorated even further and they lacked the means to continue the interest payments strongly infers that the $188,000 was not a gratuitous donation. If a jury weighs Tom Koenig's arguments - concerning how James Russick unilaterally secured the mortgage without first telling his daughter, the lack of principal repayment terms, and how he had nothing to do with the request for money in the first place – against Plaintiffs' evidence, and the jury believes Plaintiffs, then Plaintiffs will have met the clear and convincing standard to rebut the gift presumption. Thus, summary judgment must be denied on this issue. Cf. Bhagat, 84 A.3d 583 at 599 (reversing the lower courts' entry of summary judgment, finding that several statements by the defendant raised genuine issues of fact about whether the 1989-90 stock transfers were an unqualified gift from father to son or a mere matter of convenience to further a family business, including the inconsistent statements in the prior intra-family litigation, and an assessment of the defendant's credibility beyond that accomplished by simply examining affidavits, letters, notes, and other documents).

Second, Tom Koenig's argument that Plaintiffs waived their right to the interest payments is also unavailing. On this issue, Koenig has the burden of proof to show, by clear and convincing evidence, that no material disputed facts exist as to

15

his claim that Plaintiffs intentionally surrendered their right to collect interest on the $188,000.  Koenig argues that after a year of the monthly interest payments, the payments stopped, and at this time James Russick was aware of the marital discord between the Koenigs.  Koenig contends that according to his wife, her father did not know what to do about the lack of interest payments because he did not wish to upset the delicate state of the Koenig household, so he did nothing.  Koenig argues that his father-in-law's lack of effort to collect the interest at that point unequivocally evidences his intentional relinquishment of his right to collect interest.  The Court does not agree.

The evidence shows that Anna Marie Koenig made ten interest payments to her father, but those payments stopped when he became ill and died, all within a matter of a few months.  This was also the time when James Russick became aware of the Koenigs' marital troubles.  The Court cannot find as a matter of law that those three months Russick did not pursue efforts to collect interest was a waiver of that right, especially considering he was suffering from an aggressive terminal illness during that time.  Under Koenig's argument, Russick's death would be considered the ultimate waiver of his rights, which is not the law.  Moreover, during that ten-month span - from November 2008 until September 2009 - that Koenig argues

demonstrates waiver, Anna Marie Koenig made an interest payment in March 2009, which a jury could view as defeating Koenig's argument that the Russicks had intentionally given up on their rights to the interest payments. Thus, summary judgment on Tom Koenig's contention that Plaintiffs waived their rights to collect the interest payments on the $188,000 must be denied. See, e.g., Indymac Venture, LLC v. Klimkiewicz, 2016 WL 4006012, at *5 n.7 (N.J. Super. Ct. App. Div. 2016) (citing West Jersey Title & Guaranty Co. v. Industrial Trust Co., 141 A.2d 782, 786–87 (N.J. 1958)) (rejecting defendants' contention that the plaintiff implicitly waived defendants' default by allowing them to draw down $19,500 to pay outstanding unpaid interest because nothing in the plaintiff's emails constituted a "clear, unequivocal and decisive act" to waive plaintiff's rights to defendants' default).

## CONCLUSION

This Court noted in December 2015 that it was hopeful the parties could "move forward to efficiently resolve this contract dispute that has unfortunately pitted mother against daughter and son-in-law, and husband against wife." (Docket No. 24 at 6.) Over two years have passed since then, and despite this Court's hope that the parties could privately resolve their

familial dispute, it appears that a jury must now do so.[6]

An appropriate Order will be entered.

Date: April 23, 2018                          s/ Noel L. Hillman
At Camden, New Jersey                         NOEL L. HILLMAN, U.S.D.J.

---

[6] In September 2017, Tom Koenig's attorney moved to be relieved as Koenig's counsel because of Koenig's failure to pay his legal bills. The magistrate judge denied that motion without prejudice, finding that it was premature, in part because Koenig's motion for summary judgment was fully briefed and no action was required by counsel until the resolution of that motion. (Docket No. 80 at 5.) The magistrate judge permitted counsel to refile his motion after this Court issued its decision on Koenig's motion, and directed that "any such motion shall include a certification by counsel addressing specifically RPC 1.16(b)(5) and (6)." (Id.)